UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CA-11045-GAO

MICHAEL BAEZ,
Plaintiff

v.

MICHAEL MALONEY, ET. AL.,
Defendants

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(*Docket # 43*)

**Procedural History**

Plaintiff, Michael Baez ("Baez"), filed the Complaint against Defendants Michael Maloney, Eugene Marsolais, Edward Ficco, Robert Lashua, Edmund Preston, John Flowers, Michael Cravedi, Brian McManus, David Shaw, Joseph Rackett, Charles Hooper, and David Bolduc ("Defendants") on May 13, 2005 pursuant to 42 U.S.C. § 1983 seeking injunctive relief, declaratory relief, and damages. After some discovery, Defendants filed the instant motion for summary judgment on July 12, 2007. Baez submitted his response to the motion for summary judgment on August 10, 2007.[1]

---

[1] While the hand-written letter the Court received on August 10, 2007 was not in standard motion form, as Baez is *pro se*, this Court will treat the letter as his response to the motion for summary judgment. The letter further requested that the Court appoint counsel to represent him. In Judge O'Toole's order of June 24, 2005

**Factual Background**

Baez is a special management inmate at the Souza Baranowski Correctional Center ("SBCC"), a maximum-security facility located in Shirley, Massachusetts. On June 26, 2002, inmates in the Special Management Unit (in which Baez resides) were rioting: they were covering the observation windows of their cell doors, throwing garbage, and flooding their cells and the tier by blocking toilets and repeatedly flushing. In an effort to quell the riot, the prison staff "extracted" prisoners from their cells and removed them from the housing unit. Under prison practice, if prisoners in the housing unit submit to verbal commands to be handcuffed and moved, the use of force is completely unnecessary; however, if prisoners refuse to be cuffed and moved, prison staff must seek authorization before using force to extract them.

Baez, an active participant in the riot, refused to return his meal tray and had fashioned weapons out of the hard plastic tray. Baez also tore up his bedding and tied it around his cell in a web and rigged his door with weapons that would wound any

---

denying Baez's first request for appointment of counsel, he wrote that Baez could re-file a motion for counsel after the Defendants had answered his Complaint. Accordingly, this Court will treat the request in Baez's letter as his renewed motion for appointment of counsel. Despite Judge O'Toole's order, Baez has not set forth any exceptional circumstances that would warrant appointment of counsel for this case. That motion is accordingly DENIED. In the alternative, Baez requests that the case be continued until he is released from prison. As there has been no showing of circumstances that would warrant a continuance, that motion is also DENIED.

officer upon entering the cell. Baez also refused several orders to step to his cell door and be handcuffed. The shift commander, Captain Shaun Dewey, received permission from Superintendent Edward Ficco to use necessary force to remove Baez from his cell. At about 8:35 p.m., the SBCC Mental Health Director for the University of Massachusetts Correctional Health Services, Mark Radosta, attempted to persuade Baez to submit without a struggle, and warned Baez that the Superintendent had authorized the extraction team to use force. Baez still refused to be handcuffed. Captain Dewey then instructed Lieutenant Lashua to assemble an extraction team.[2]

Between the hours of 9:00 p.m. and 11:16 p.m., the extraction team discussed the safest and most effective ways to secure Baez, rehearsed various maneuvers and scenarios, and repeatedly attempting to convince Baez to submit to verbal commands and avoid the use of force. Meanwhile, Baez was yelling threats in Spanish to the rest of the ward and attempting to attack corrections officers through the food slot in his cell door. By 11:16 p.m., it had become clear that Baez would not submit to verbal commands, and the extraction team had formulated a plan for the safest way to enter Baez's cell and restrain him. The team entered Baez's cell, restrained him by use of

---

[2] The extraction team was assigned as follows: Lieutenant Lashua, team leader; Brian McManus, shield person; David Bolduc, left extremity; David Shaw, right extremity; Edmund Preston, restraints; and Michael Cravedi, alternate. The duties that correspond to each position are described in the Department of Corrections' policy and training manual.

force, removed him from his cell, and conducted a strip search for possibly concealed weapons.

The question currently before this Court is whether the District Court should grant summary judgment in Defendants' favor as to whether Defendants used malicious and inappropriate force in subduing Baez. In the alternative, Defendants argue that they are entitled to qualified immunity and cannot be sued. This Court does not reach the alternative argument due to a finding that the claim itself is absent a basis in law or fact.

**Analysis**

The Supreme Court laid out the standard of review for summary judgment pursuant to Fed. R. Civ. P. 56 in Celotex Corp v. Catrett, 447 U.S. 317 (1986). For a party to be granted summary judgment, the moving party must show that there is no genuine issue of material fact in question, and the moving party is entitled to judgment as a matter of law. Id. at 317. A fact is material if it could affect the outcome of the case. Orwat v. Maloney, 360 F. Supp. 2d 146, 152 (D. Mass. 2005).

The trier of fact must view the evidence in the light most favorable to the non-moving party; however, the evidence must be such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest on mere

allegations." Orwat, 360 F. Supp. 2d at 152 (quoting Barbour v. Dynamics Research Corp., 63 F. 3d 32, 37 (1st Cir. 1995)). Further, the moving party's burden may be met merely by drawing attention to the lack of evidence supporting the non-moving party's position. Orwat, 360 F. Supp. 2d at 152 (quoting Michealson v. Digital Fin. Serv., 167 F. 3d 715, 720 (1st Cir. 1999)).

Baez avers two positions regarding the events of June 26, 2002.[3] First, he avers that the staff's use of force was excessive to the point of violating the Eighth Amendment prohibition against cruel and unusual punishment. Second, he avers that upon his return from the hospital, he was subjected to intentional infliction of emotional distress, based upon threats, deprivation of personal property, and humiliation. This Court will examine each argument in turn.

In Hudson v. MacMillan, 503 U.S. 1 (1992), the Supreme Court held, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Prison staff have traditionally been granted wide latitude in determining the amount of force necessary

---

[3] Baez's response to the motion for summary judgment merely restates the allegations in his Complaint and does not add anything substantive to his argument.

to maintain order. Prison staff must take into account the threats to inmates, to prison staff, and to visitors, and balance all of these risks against the possible force to be used. Id. at 320. Prison staff, therefore, are granted a wider margin of error than "ordinary errors of judgment." Id. at 322. Regarding this latitude, the Supreme Court wrote:

> It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322. As the evidence in this case does not "support a reliable inference of wantonness," given all of the above factors, Baez cannot prove a violation of his Eighth Amendment rights.

Baez cannot show that the use of force was wanton or malicious, unnecessary, or excessive. Among the factors considered are "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," as well as the threat to the staff and other inmates and any attempts the staff may have made to avoid the use of force. Id. at 321 (internal

citations omitted). Baez had threatened the staff, indicated his desire to inflict mortal wounds on them, and posed a very real threat due to the weapons he had made and the webbing he had made out of his sheets. The staff attempted to persuade Baez to submit to verbal commands, which would have avoided the use of force altogether, but Baez refused. The staff also examined alternatives and ultimately decided upon a method that, in their opinion, would minimize the force and injury flowing from the extraction. Before entering his cell and using force to subdue him, they attempted to convince him to submit to cuffing verbally, had the staff psychologist, acting as an independent party, attempt to convince him to submit to verbal commands, discussed possible non-forceful alternatives, and rehearsed several scenarios intended to minimize any harm to Baez upon entering his cell. All of the above is absent factual opposition. Taking all of these factors into consideration, Baez cannot present evidence that he was subjected to cruel and unusual punishment on June 26, 2002.

Second, Baez claims that his treatment upon return to the prison amounts to intentional infliction of emotional distress. He claims that returning him to the same tier caused him emotional distress, and that when he was returned to the tier he was deprived of property and hygienic items. He further argues that he should have been transferred to another prison instead of returned to the same "hostile environment."

In order to recover for intentional infliction of emotional distress, Baez must

prove each of the following elements:

> (1) Defendants intended to inflict emotional distress or should have known that emotional distress was the likely result of their conduct; (2) Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community; (3) Defendants actions were the cause of his distress; and (4) the distress was severe and of a nature that no reasonable person could be expected to endure it.

Orwat, 360 F. Supp. 2d at 165 (internal citations omitted). These elements combined make intentional infliction of emotional distress a very high bar which Baez has failed to reach. The analysis generally turns on the second element: whether the conduct was extreme and outrageous. Baez has offered no evidence regarding the guards' behavior upon his return to the tier, nor has he offered evidence regarding the effect the treatment has had on him. His underlying argument regarding intentional infliction of emotional distress largely rests on the assumption that his Eighth Amendment rights were violated; as he cannot prove there was any Eighth Amendment violation, his emotional distress argument is *de minimis* at best. Because there is no issue of material fact regarding his treatment upon returning from prison, summary judgment is appropriate on this issue as well.

**Conclusion**

For the above stated reasons, this Court FINDS that there are no issues of material fact and that Defendants did not use inappropriate or malicious force in

restraining Baez.  Accordingly, this Court RECOMMENDS that the District Court GRANT Defendants' motion for summary judgment.


SO ORDERED.


August 22, 2007                                             /s/ Joyce London Alexander
Date                                                        United States Magistrate Judge

## NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United sTates District Court for the District of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health and Human Servs., 848 F. 2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F. 2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F. 2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F. 2d 376, 378 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F. 2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).